```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    JONATHAN J. POLLARD,

4                    Petitioner,

5            v.                              15 Civ. 9131 (KBF)

6    UNITED STATES PAROLE COMMISSION,
     et al.,
7                                           Argument

             Respondents.
8    ------------------------------x

9
                                            New York, N.Y.
10                                          December 14, 2015
                                            2:00 p.m.
11
     Before:
12
             HON. KATHERINE B. FORREST
13
                                            District Judge
14

15

16

17

18           APPEARANCES

19
     CURTIS MALLET-PREVOST COLT & MOSLE LLP
20        Attorneys for Petitioner
     BY:  ELIOT LAUER
21        SYLVI SAREVA

22
     PREET BHARARA
23        United States Attorney for the
          Southern District of New York
24        Attorney for Respondents
     REBECCA SOL TINIO
25        Assistant United States Attorney
```

1          (Case called)

2          THE COURT:  Good afternoon.

3          What I would like to do is start by giving you folks

4    the Court's predicted decision orally first.  Then I would like

5    to have you address that decision very specifically in terms of

6    have I misunderstood the facts or the law or otherwise gotten

7    things wrong.  I'm going to start with some background, and

8    then we'll take it from there and see whether Mr. Lauer wants

9    to begin or whether the government wants to begin in terms of

10   the Court's decision in terms of whether it changes the state

11   of play.

12         As we all know, the petitioner is here on a petition

13   under 2241, which is a habeas petition relating to changing the

14   conditions of his parole.  He requests that certain terms of

15   his parole be vacated.  He served 30 years of a life sentence

16   and has been recently paroled.

17         As we all know, parole is no longer available in the

18   federal system.  It was in fact eliminated shortly after Mr.

19   Pollard was sentenced.  After 1987, if one was convicted of a

20   crime and sentenced to life imprisonment, one would in fact

21   serve that.

22         The government has described the background of the

23   case very briefly as follows.  While employed as a civilian

24   intelligence analyst for the U.S. Navy, Mr. Pollard delivered

25   classified documents to representatives of the government of

1  Israel.  He would remove hardcopy documents from a government

2  building, place them in a suitcase, and hand the suitcase to an

3  Israeli handler.  The documents would be copied and returned to

4  the government building.  This occurred at various times

5  between 1984 and '85.  Mr. Pollard pled guilty in June of 1986.

6  He was sentenced to life imprisonment on March 4, 1987.

7      Mr. Pollard challenges three conditions of his parole.

8  One is computer monitoring of both work and personal use.  He

9  argues that it is not reasonably related to the offense of

10  conviction, not reasonably related to his history and

11  characteristics, not reasonably related to the goals of

12  sentencing, and conflicts with the goal of rehabilitation.  He

13  also argues that it is not a condition needed for the

14  protection of the public welfare and that it is particularly

15  and unreasonably onerous.  Petitioner notes that the Internet

16  did not exist at the time of his conviction.

17      The second condition is GPS monitoring.  He asserts

18  the same concerns but, in addition, that the GPS monitoring

19  should be enforced by the least restrictive means of achieving

20  the government's interests.  As imposed, he asserts that it is

21  both statutorily and constitutionally impermissible and that it

22  interferes with his religious observance: in particular, that

23  he would need to recharge the battery during the sabbath or

24  otherwise be in violation of his parole conditions.  The Court

25  notes that the government has informed the Court that a new GPS

1   device is available that would have extended battery life, two

2   batteries, for a total of a 40-hour battery life.

3        The third condition of parole that Mr. Pollard

4   challenges is his 7:00 p.m. to 7:00 a.m. curfew.  He argues

5   that it serves no purpose at all and, as imposed, interferes

6   with his religious observance, as it prevents him from

7   attending various religious services and events.

8        The Court notes that the parole commission's statement

9   of reasons as to each of the conditions it reviewed on its

10  appeal to the commission was a single page.  That is Exhibit G

11  to the Lauer declaration.

12       I turn next to the statutory framework, which is 18

13  U.S.C. section 4206(d), which provides that the commission

14  shall not release a prisoner if it determines that he has

15  seriously or frequently violated institution rules and

16  relations and that there is a reasonable probability that he

17  will commit any federal, state, or local crime.

18       18 U.S.C. 4209 subpart (a) provides that the

19  commission may impose or modify other conditions of parole to

20  the extent that such conditions are reasonably related to the

21  nature and the circumstances of the offense and the history and

22  the characteristics of the parolee.

23       I want to make sure I didn't misstate when I was just

24  talking about 4206(d).  It should say that the commission shall

25  not release a prisoner if it determines that he has seriously

or frequently violated institution rules and regulations and
that there is a reasonable probability that he will commit any
federal, state, or local crime.  I wanted to make sure I had
all my "not"s and my "in"s in the right place.

Lastly, under 4209 there is an additional provision,
which is that the commission may impose or modify conditions of
parole and may provide for such supervision and other
limitations as are "reasonable to protect the public welfare."

As we all know and the parties have argued to the
Court, supervised release replaced parole for crimes as of
November 1, 1987.  While the Supreme Court has stated that
parole is closely analogous to supervised release -- and that
is the Samson case, 547 U.S. 843, 854; the Johnson case 529
U.S. 694, 710-711 -- and while the court may modify the terms
of supervised release, the court does not modify the terms of
parole; that is for the parole commission to do.  So that is a
difference between the two types of restrictions.

Parole conditions are also governed by 28 CFR section
2.40, which is promulgated by the DOJ, which governs the
imposition of conditions of release.  Under subpart (b) as to
special conditions, it states, "They may be imposed if we
determine that imposing the condition is reasonably related to
the nature and the circumstances of your offense or your
history and characteristics and at least one of the purposes of
sentencing.  In choosing a condition, we will also consider

1   whether the condition imposes no greater deprivation of liberty

2   than was reasonably necessary for purposes of deterrence of

3   criminal conduct, protection of the public from the crime, and

4   offender rehabilitation."

5          In terms of procedural history, let me turn to that

6   next.  On August 26, 2015, even prior to the time the

7   petitioner was released on parole, he challenged certain

8   conditions.  The government argues that he did not challenge

9   the imposition of the computer monitoring restriction on his

10  home computer.  We'll talk about that.

11         On October 8, 2015, the parole commission's national

12  appeals board eliminated one computer access restriction but

13  otherwise affirmed the restrictions.  I refer to "the

14  commission" to include both the parole board and the appeal

15  board.  As to the GPS condition, the board found that the

16  restriction was reasonably related to his offense that involved

17  covert conduct and to the need to deter petitioner from further

18  crimes.

19         As to the computer monitoring condition, the

20  commission stated that, "As a practical matter, the boundaries

21  between personal and business computer use are blurred.  This

22  condition will assist the U.S. probation office with ensuring

23  that you are complying with your ongoing obligation under the

24  plea agreement."  The agreement prohibits further disclosure of

25  classified information and that if, for instance, Mr. Pollard

1    writes a book, he must submit it to the director of naval

2    intelligence for a prepublication review.

3            Implementation of the computer and GPS conditions was

4    left to the probation office.  Mr. Pollard was released on

5    November 20, 2015.  The probation office, in exercising their

6    duties and responsibilities delegated to them from the parole

7    board and parole commission, sua sponte imposed a 7 days a week

8    curfew of 7:00 to 7:00.  In discussions between probation and

9    defense counsel, probation did indicate that the curfew was

10   standard.

11           The Court notes that the curfew and the GPS conditions

12   appeared to be to monitor certain exclusion zones which are not

13   challenged.  Those are relating to Mr. Pollard's ability, which

14   is thereby prevented, from accessing the embassies of Israel,

15   South Africa, China, and Russia -- those are certain exclusion

16   zones -- as well as various airports in the metropolitan area.

17           The arguments are very high-level, of course.  They

18   are set forth in detail in the papers that have been presented

19   by the petitioner:

20           That the parole commission failed to determine whether

21   there was "a reasonable probability that Mr. Pollard would

22   commit another serious crime," and that the position of the

23   government in connection with the grant of parole, along with

24   submissions of Robert McFarland, the U.S. national security

25   adviser at the time of Pollard's arrest, and former Senator

1   Dennis DeConcini, who served on the Senate intelligence

2   committee at the time of arrest and who later chaired the

3   committee that reviewed classified portions of Pollard's file,

4   both of those individuals affirmed that the classified

5   information to which Pollard had access would be of no use

6   today.  Petitioner argues that the parole commission had to

7   make, effectively, a contrary finding and did not; that is a

8   legal question as to whether or not that was in fact required.

9         Petitioner also argues that in determining that parole

10  was warranted, the parole commission made the opposite finding,

11  that there was no such probability.  As cast, the Court notes

12  that that argues too much.  According to that standard, the

13  parole commission must always make the determination as to any

14  individual prior to granting of parole that there was no

15  reasonable probability of an additional crime.  If the Court

16  were to accept the argument wholesale, then in all cases where

17  such a finding had been made for the grant of parole, special

18  conditions would conflict with this determination.  No court

19  has gone that far.

20        Petitioner, finally, also argues that the probation

21  office has exacerbated conditions by imposing additional

22  restrictions, primarily curfew.

23        The government argues that parole was acting within

24  its discretion pursuant to the authority delegated to it, that

25  petitioner failed to exhaust his administrative remedies with

regard to the monitoring of his home computer, that the

conditions satisfy the deferential, rational basis standard of

review that applies to parole commission determinations, that

petitioner has failed to show that the GPS and curfew

conditions substantially burden his exercise of religion, and

that in terms of the computer monitoring condition, that is

justified according to the government based upon the more

limited Fourth Amendment rights due to a parolee.

Let's talk about the legal standard and the Court's

determination.  Let me address ripeness first.  The ripeness

point as to the home monitoring restriction is an important

argument but does not preclude review.  The Court generally

cannot review a condition that was not appealed unless there

has been plain error.  That means that the condition not raised

below has to have been error, that error has to have been

plain, and it has to have affected substantial rights.  When

such conditions are met, the court may review the forfeited

error if the error "seriously affects the fairness, integrity,

or public reputation of the judicial proceedings."

Second, there are a number of other legal principles

that are in play here, and the standard of review is where I

will start.  In reviewing the commission's parole

determinations, the Court's role here is to inquire whether

there is a rational basis in the record for the commission's

conclusions embodied in its statement of reasons.  That is the

Iuteri v. Nardoza case, which is a Second Circuit 1984 case.
That case was a review of a parole decision, not a special
conditions decision, but the principle is applicable
nonetheless.

Further, in reviewing the parole commission's
determinations, the district court may not substitute its
judgment for that of the commission, and therefore the scope of
its review is very limited.  That is the Zannino v. Arnold
decision, and there are a number of decisions that are similar
to it, Second Circuit 1976.

The Court according to that case and the various
principles that follow that case, which are quite clear, the
court is to look for what is a factual basis to support the
commission's determinations.  The inquiry is not whether the
commission's determinations are based on a preponderance of the
evidence or even by substantial evidence.  The inquiry is only
whether there is a rational basis in the evidence in the record
for the commission's conclusions embodied in its statements of
reasons.

That same case also stands for the proposition that if
there is adequate supporting information to show a rational
basis, that's the end of the court's inquiry.  It also states,
"It would have been and would be within the sound discretion of
a district court to remand to the parole board to make a fuller
showing of the factual bases underlying the statement of

1    reasons."  As you folks will soon hear, that is what this Court

2    intends to do and believes is appropriate here.

3            Another principle relevant to this petition as set

4    forth in the Birzon case, which is a Second Circuit 1972 case,

5    is that "the government can infringe on First Amendment rights

6    of prisoners so long as the restrictions reasonably and

7    necessarily related to the advancement of some justifiable

8    purpose of imprisonment; and, when a convict is conditionally

9    released on parole, the government retains substantial interest

10   in ensuring that its rehabilitative goal is not frustrated and

11   that the public is protected from further criminal acts by the

12   parolee."

13           The Morrissey case provides additional important

14   principles which state in sum that the liberty of a parolee

15   enables him to do a wide range of things open to persons who

16   have never been convicted of any crime, though the state

17   properly subjects him to many restrictions not applicable to

18   other citizens.  His condition is very different from that of

19   confinement in a prison.  That's the Morrissey v. Brewer case,

20   U.S. Supreme Court 1972.

21           It also states that "The liberty of a parolee includes

22   many of the core values of unqualified liberty and also that

23   the state has found the parolee nonetheless guilty of a crime

24   against the people, and that that finding justifies imposing

25   extensive restrictions on the individual's liberty.

1          A sentencing court therefore, according to the Second

2     Circuit in other cases, may order a special condition that is

3     reasonably related to the statutory sentencing factors.

4     Although the discretion is broad, the Second Circuit has stated

5     that it will carefully scrutinize unusual or severe conditions.

6     That is the Sofsky case, Second Circuit 2002.  That related to

7     monitoring of a computer in that case.

8          Here, turning to my discussion, the record of the

9     parole commission's reasons I believe is insufficient to

10    support the nature and the breath of the restrictions.  The

11    Court will not second-guess those restrictions unless and until

12    the commission has had an opportunity itself to more fully set

13    forth its rationale.  It may be that each of the restrictions

14    is appropriate as imposed; the commission will have the

15    opportunity to demonstrate that.

16         At base, there is a fundamental issue, however, which

17    the Court believes informs its review and further appellate

18    review of the severity of the restrictions, and that is the

19    question as to whether there is anything that Mr. Pollard can

20    disclose that would endanger the public, is there any

21    confidential government information left to disclose.  If the

22    answer is yes, then obviously broad restrictions may be

23    justified.  If the answer is no, then the broad restrictions

24    take on a different appearance and must serve other sentencing

25    requirements.

1          The parole commission's decision does not address this

2     question directly.  Indeed, its statement of reasons, as I

3     said, is only one page and is quite cursory.

4          As we are at the outset of what will be, and the "we"

5     here is the government and the court system, a lengthy

6     monitoring process over the remainder of Mr. Pollard's life

7     unless his parole conditions are eliminated, the parole

8     commission should grapple with this question and then include a

9     finding as to the resolution of this question in its statement

10    of reasons for the conditions imposed.  That is not something

11    which necessarily is required to support the restrictions, but

12    it certainly would go a long way to supporting the

13    restrictions.  It should in general develop its statement of

14    reasons.

15         Even if the commission's decision is that there is no

16    information that remains secret that Mr. Pollard knows, the

17    Court cautions that that does not eliminate the basis for the

18    imposition of certain special conditions, including those here,

19    though they may or may not maintain all of the breadth which

20    they currently have.

21         For instance, an easy one, I think, relates to Mr.

22    Pollard's agreement in his plea agreement to have a

23    prepublication review of his book if he ever writes a book.  I

24    think that is a TBD.  I don't know that there is a book in the

25    offing, but that condition would remain.

1          Similarly, the very fact that Mr. Pollard committed

2     such an egregious crime against the state itself demonstrates a

3     level of criminality at a much earlier point in time, which may

4     justify a certain amount of ongoing monitoring, but it has to

5     be, I think, brought forward to justify and support the very

6     severe broad restrictions here.

7          Let me talk very briefly about the challenged

8     restrictions.  As to the home monitoring, there was no

9     challenge raised below.  The petitioner must exhaust his

10    administrative remedies and will have a further opportunity to

11    do so in light of this remand.  However, I would note that the

12    commission itself has noted the merger between home and

13    business computer use and that therefore this term is very

14    likely to follow whatever is the ultimate decision on the

15    business monitoring of the computer.

16         Pollard argues that the monitoring of a work computer

17    is unjustified and overly restrictive, as I have already said.

18    The Court finds that the parole commission has not sufficiently

19    justified this condition to allow for the full review it needs

20    to do under the appropriate standard.  As I said, it's a very

21    cursory statement with regard to that statement to that

22    condition.

23         Petitioner argues that his use of a computer with work

24    at a financial services company will chill the desire for

25    employers to want to use him at all or as fully as they

otherwise might.  The government says that that is unproven at

this point.  The Court can't think of a job that anybody can do

these days without a computer and without access to the

Internet, and certainly in a financial services company.  Maybe

there is something; it's not one that I am aware of.

However, it is not the case that a parolee is

necessarily entitled to the job of his choice if the special

conditions are otherwise fully justified.  There is no basis in

the record as it currently stands to support this broad

condition.  This book that we talked about is really something

that can be dealt with in a totally different way, in a much

more less intrusive manner.  So, the parole commission needs to

look at this.

The Court does note that Mr. Pollard never used the

Internet, in fact it didn't exist, and I agree with that point.

If there is secret information which Mr. Pollard can

still disclose, then there is certainly possible extensive

monitoring that might be appropriate.  This might be so even

though such a condition could interfere with petitioner's

efforts to be appealing to certain employers or to do certain

kinds of work.  But that would be part of the balancing test

that would have to go on.

In terms of GPS monitoring, it is certainly true that

parolees have only conditional liberty.  That is the Thomas

case, Second Circuit 1984; the Grimes case, Second Circuit

2000.  And intrusions into a parolee's privacy must be pursuant

to a rule and regulation that itself satisfies the Fourth

Amendment.  That is the Barner case.  There is similarly

insufficient factual basis for this condition, and the factual

record should be developed for the GPS monitoring.

     The monitoring condition appears to be directed at

maintaining compliance with the exclusion zones to ensure that

the defendant does not go to the Israeli embassy or try to flee

the country.  This may well be justified to the extent that

there is a real concern that the petitioner carries in his head

information that would be of use to a foreign government.  Of

course, it would seem that if the issue is simply dissemination

of additional secret information, that could be accomplished in

one's kitchen or office in a meeting at home without the need

for flight.

     If the information Mr. Pollard has is no longer

confidential, then the breadth of these conditions may need and

do need some additional justification.  In the absence of a

factual determination as to some danger based on what Mr.

Pollard still knows, if anything, that would be of current use

to a foreign government, it is unclear what the GPS monitoring

is intended to do.  The Court understands that petitioner's

crime involved covert means, as the commission stated.  But

that is as to a past fact, and it is unclear how that relates

to protection of the public welfare or any other sentencing

1   factor currently.  The curfew, in my view, appears to really

2   follow what happens with GPS.

3          In terms of the Religious Freedom Restoration Act,

4   which goes by the acronym RFRA, that provides that the

5   government may substantially burden a person's exercise of

6   religion only if it demonstrates that application of the burden

7   to the person is in furtherance of a compelling government

8   interest and is the least restrictive means of doing so.  The

9   RFRA requires strict scrutiny of otherwise valid laws of

10  general application where the incidental burden on religion is

11  substantial.

12         I believe that this claim is properly reviewed after

13  the additional factual record as I discussed above is made.

14  Until that time, I can't properly address the extent of the

15  compelling interest by the government.  I need to understand

16  the government interest, what it is, to be able to make that

17  weighing analysis.  The Court may also need a further

18  evidentiary record, it is unclear, on the extent to which there

19  is a true burden on the exercise of petitioner's religion based

20  upon the condition.

21         The Court declines to vacate the conditions of parole

22  given the crime's serious nature and the impact potentially on

23  national security.  The Court is not going to second-guess the

24  determinations of the parole commission or of probation until

25  they have an opportunity to address the record themselves.

1          Based on the above, it is the Court's current

2     intention, subject to the argument that I hear from parties

3     right now, to remand this matter to the commission for further

4     development of the factual basis for its statement of reasons

5     for the challenged conditions.  I would note that the

6     commission should pay particular attention to 28 CFR section

7     2.40 and the language therein when doing so.

8          I know that that was lengthy, but that gives you a

9     sense as to where I am.  Certainly, Mr. Lauer, if I've gotten

10    it wrong, you should let me know.  If you agree that that is

11    the right disposition and my bases are appropriate, there is no

12    reason to have to take a lot of time if we don't need to.

13          MR. LAUER:  Your Honor, I think you got it right.

14    Obviously, in light of your Honor's decision, we will abide the

15    event of the commission coming back in the event they are able

16    to meet the standards and develop additional information.

17    There are a couple of minor points that I would like to put on

18    the record so that there is no confusion.

19          The Court made reference early on to the fact that the

20    U.S. Attorney's office or the parole commission had come up

21    with a new device with a 40-hour battery.  As set forth in the

22    declaration of Rabbi Pesach Lerner, the battery change is no

23    different than putting a plug into a socket.

24          According to Rabbi Lerner's declaration -- and this is

25    well-established, you can basically Google this -- observant

1    Jews do not do anything on the sabbath, which is a 25-hour

2    period, not a 24-hour period, do nothing on the sabbath that

3    creates an electrical current.  Therefore, changing a battery

4    in a battery operated device is an equal desecration of the

5    sabbath as is putting a plug into a socket.

6              Observing this tenet is a fundamental tenet of

7    Judaism.  It's several thousand years old and it is a core

8    belief.  It is a core part of the religious faith.  So, the

9    battery change offers absolutely no assistance in enabling Mr.

10   Pollard to observe the tenets of his faith.

11             THE COURT:  Let me ask you, Mr. Lauer, so that we can

12   have the framework for how I think about this clearly in mind

13   and understand where you differ from that framework.  The Court

14   believes that if there was a sufficiently compelling govern-

15   mental interest, that even a burden on religious observance

16   would be tolerated, but there has to be a balancing, and the

17   balancing needs to be quite carefully done.  Before I think one

18   can get into the nuances of the extent to which a particular

19   requirement burdens religion and may or may not violate the

20   RFRA, the Court needs to have first the factual table set, if

21   you will.

22             MR. LAUER:  I appreciate that.

23             THE COURT:  Do you agree?

24             MR. LAUER:  I do agree.  I agree that the issue is

25   ultimately to be decided after the commission comes back, if

1   they are able to come back, to show a compelling government

2   interest.  I just didn't want there to be a misunderstanding in

3   terms of whether that device alleviates the problem.

4         I would like to make perhaps one application, and that

5   is with respect to the Internet.  That really is a much more

6   time-sensitive issue.  Mr. Pollard as a practical matter cannot

7   work in the financial services industry without the Internet

8   and without resolving this issue.  As the Court recognizes,

9   there is no restriction on Mr. Pollard's communicating face to

10  face with people in his kitchen or in Starbucks.  He has been

11  out for three weeks.  He has met with a number of people.

12  There is no monitoring.

13        THE COURT:  Let me tell you that until the commission

14  weighs in, there is no way I would touch the restriction,

15  because if I were wrong, I'm treading in an area that could be

16  quite serious.  I want to give the commission the opportunity.

17  It has the expertise and it has the ability to make a fact-

18  finding that is necessary.  I want to let them do it.

19        Are there some procedures were you can do this in an

20  expedited fashion, you can take this up with the commission in

21  an expedited fashion?

22        MR. LAUER:  I would hope that they could do that.  I

23  would make one final statement for the record.  This deals with

24  the issue of whether or not Mr. Pollard has any useful

25  information.  The declarations of Senator DeConcini and

 1   national security adviser McFarland were both presented in the

 2   parole process and again in this proceeding.  They have never

 3   been challenged, they have never been disputed.

 4        Nowhere in the parole hearing process did the

 5   government or anyone else, including members of the defense

 6   agencies that participated, no one ever suggested that Mr.

 7   Pollard in fact had usable information that he has retained in

 8   his head that might be of interest to anyone.

 9        THE COURT:  I understand the point.  I think what

10   needs to happen, in the Court's view, is for the matter to go

11   to the commission.  They can develop what additional factual

12   record they deem useful or appropriate.  If they do not

13   disagree that there is no remaining secret information in Mr.

14   Pollard's head that they are aware of or have reason to believe

15   exists, that I think places this matter in one particular

16   posture.  If they do believe that there is something, the Court

17   would certainly not second-guess that.  This Court would not

18   second-guess that if that is their factual determination.

19        MR. LAUER:  I'll rest at this point, your Honor, and

20   wait for the commission.  Thank you.

21        THE COURT:  Let me hear from the government.  Mr.

22   Jones, Ms. Tinio?

23        MS. TINIO:  Good afternoon, your Honor.  Your Honor,

24   it is probably fair to say that the respondents may not agree

25   in full with the Court's reasoning this afternoon.  However, we

1    do agree with the Court that the proper remedy, since the Court

2    has viewed the U.S. parole commission's determinations with

3    skepticism, the proper remedy is remand to the U.S. parole

4    commission, and we appreciate that that is the avenue that the

5    Court has taken.

6          With respect to the concern about timing, the U.S.

7    Attorney's office doesn't control the U.S. parole commission's

8    timing.  But in my experience so far, the client has been

9    responsive, and we hope that that will continue.

10         THE COURT:  Let me have you pause for a moment.  I

11   want to make sure that my comments before are taken in the

12   right light.  If the statement of reasons is further made

13   fuller and if the Court, if I, were to read a fuller statement

14   of reasons and to read the restrictions against that backdrop,

15   I may not have any skepticism.  It is only against the backdrop

16   of a one-page high-level cursory statement.

17         If there is no further statement of reasons to be had,

18   then I think I do have concerns.  But I want to be clear that

19   it is not as if I've evaluated these factually against what I

20   believe is the full record.

21         MS. TINIO:  That was how I understood the Court's

22   instructions.  I appreciate the clarification, and the

23   respondents appreciate it as well, your Honor.  I obviously

24   don't want to take up too much time unnecessarily.  I will make

25   a few comments on the record.

```
 1              Most importantly, respondents would like to clarify

 2    what I believe to be the immediate import of the Court's

 3    ruling, which is that at the moment the Court is not vacating

 4    any of the parole conditions until the point at which the U.S.

 5    parole commission has time to promulgate further statements of

 6    reasons if that is what they wish to do and get back to the

 7    petitioner.  Is that correct?

 8              THE COURT:  That is correct.  To the extent that the

 9    normal process allows for give-and-take between the petitioner

10    here, Mr. Pollard, and the probation office to try to reach

11    accommodations on certain things in the interim, I would hope

12    that that would continue to occur.

13              I understand that there have been references where

14    probation has indicated it is fully willing to have

15    conversations about the sabbath and other observances.  To the

16    extent that there can be a working relationship that allows

17    that to happen in the interim, I would fully expect that things

18    would continue to be done in that fashion.

19              MS. TINIO:  In that vein, your Honor, I appreciate

20    that invitation and that admonition.  In that same vein I would

21    like to convey what we have put in our briefing, which is that

22    probation has repeatedly expressed, not only to me but I

23    believe also on the record, to the petitioner that they are

24    always willing to hear from him and to work with him on his

25    conditions.
```

1          They have told me over and over that their goal is to

2     implement what they have been told to do by the parole

3     commission but also do so in the least restrictive means

4     possible.  Your Honor can see that from the probation office's

5     continuing efforts to find a GPS monitoring solution that might

6     be the least burdensome to Mr. Pollard.  Their options are

7     limited.  They are limited to the technology that is available

8     to them.  But I think we have shown that they are continuing to

9     try.

10         Actually, just this morning, there is a slightly new

11    development, and I apologize, that sort of changes the factual

12    landscape here a little bit.  We have actually been pushing and

13    pushing to try and understand what GPS technology is available

14    and what the capacities and capabilities are of the technology

15    that we already do have available.

16         A conversation between the probation office and the

17    monitoring contractor this morning actually suggested strongly

18    to probation that the device that Mr. Pollard is currently

19    using has a much greater charge capacity when he is at home

20    near the base station.  The contractor told probation this

21    morning that it could actually charge for up to 80 hours when

22    he is at home.  If he were to leave --

23         THE COURT:  When you say charge, you mean how long the

24    charge would last or how long it would be on the charger?

25         MS. TINIO:  The charge would last without need to plug

1    in the charger.  The contractor also told probation this

2    morning that if Mr. Pollard were away from his home

3    continuously, the charge could last for about 24 hours.  So

4    some mix of at home and away would reasonably suggest that the

5    charge would last somewhere between 24 and 80 hours.

6           Of course, this is just new information.  We want to

7    provide it to the Court and to the petitioner to see how the

8    GPS monitoring is going.  But the overall moral of the story

9    here is that probation would like to continue working with Mr.

10   Pollard and communicating with Mr. Pollard about his

11   conditions.

12          Mr. Lauer mentioned that Mr. Pollard was restricted

13   from using the Internet.  That is not the case.  That is

14   actually the specific condition that the national appeals board

15   overturned when Mr. Pollard appealed.  Mr. Pollard is not

16   prevented from using the Internet.

17          THE COURT:  He is not prevented from using the

18   Internet.  As I understand it, his use of the Internet at home

19   currently is constantly monitored.  If he took on an employment

20   position, similarly it would be subject to some form of

21   constant monitoring.

22          MS. TINIO:  My understanding is that Mr. Pollard

23   actually does not have a home computer yet, so there is no home

24   monitoring, because he has no personal device at home.  I would

25   mention, too, that not only did we advance an exhaustion

1    argument as to the home computer, but Mr. Pollard actually, in

2    his reply brief on page 4, abandoned any challenge to the home

3    monitoring.  He may take a different position when he goes back

4    to the parole commission.

5            THE COURT:  You are talking about page 4 of his

6    underlying brief to the appeals board, and also here?

7            MS. TINIO:  No.  Page 4 of his reply brief to this

8    Court that was filed Sunday.

9            THE COURT:  Yes, all right.

10           MS. TINIO:  Our argument as to the work monitoring

11   condition was that he had not proved that that was actually an

12   impediment.  He has said in his papers that he has an offer of

13   employment.  In the reply brief that he filed on Sunday there

14   was a footnote to the effect that his counsel has essentially

15   talked to his perspective employer and advised him not to be in

16   employment until after this dispute is resolved.  So it is very

17   unclear as to what the actual situation is with the prospective

18   employer.

19           Our point is simply he at no point produced a

20   declaration or any evidence that any employer at all had

21   actually objected to him based on the computer monitoring

22   requirement.  That is mostly just to clarify the record.

23   Because we are going back to the parole commission, it is sort

24   of moot for the moment.

25           The last thing I will say, your Honor, is your Honor

evinced a very strong concern about the perhaps continuing

classified nature or perhaps continuing harm that might be

posed by the dissemination of any information that Mr. Pollard

obtained when he was a naval intelligence officer.  I

definitely would admit that this is not in our submissions.

It's sort of been a process of continuing to understand the

elements here.

        But My understanding from consulting with the national

security division is that the majority of the information that

Mr. Pollard had and passed along 30 years ago, your Honor,

remains classified.  As such, under executive order 13526, that

information is classified as top secret.  The executive order

says that the unauthorized disclosure of that information

reasonably could be expected to cause exceptionally grave

damage to the national security, and any information that was

classified as secret as defined by the executive order as the

unauthorized disclosure of what could reasonably be expected to

cause serious damage to the national security.

        If your Honor would find it helpful for the government

to put in a declaration as to the classified nature of Mr.

Pollard's information and citing the executive order, we could

certainly do that if that would be of any use.

        THE COURT:  I think it is really up to the commission

to have that information before it.  If the commission reviews

that information in terms of the underlying facts -- when I say

```
 1    that, I mean what you are basing your statement on, whether

 2    it's a letter from the national security division, however the

 3    information is conveyed -- that I think is the place to start.

 4            I see myself as really a court that is to look at what

 5    the commission has written down as its statement of reasons.  I

 6    don't think I would necessarily, I don't think I could

 7    necessarily, second-guess its factual finding.  It's whether or

 8    not there is a factual basis in the record.  That is for the

 9    commission to look at.

10            MS. TINIO:  That is a fair point, your Honor.  With

11    that, I will also rest.

12            THE COURT:  Thank you.  Mr. Lauer.

13            MR. LAUER:  Your Honor, one clarifying point so there

14    is nothing misunderstood.  Based on our litigation under FOIA

15    and directly in the District of Columbia court, no member of

16    the parole commission has security clearance.

17            THE COURT:  They will understand, I think, what their

18    task is.  If they can do only some but not all of their task

19    and it needs to be presented in some other manner, sufficient

20    unto the day, as I say, step by step.

21            MR. LAUER:  Correct.

22            THE COURT:  I think this is the first step.  I think

23    it is the right step.  It sounds like I'm not hearing any

24    objection to this.  Am I right about that?

25            MR. LAUER:  None from us, your Honor.
```

1          MS. TINIO:  No, your Honor.

2          THE COURT:  The Court will issue a very short order

3   that will remand this matter to the parole commission for

4   further findings consistent with the Court's decision as set

5   forth now on the transcript.  Hopefully, some of you are

6   ordering the transcript so that the parole commission will be

7   able to have access to that.

8          This matter is adjourned unless there is anything

9   further that we ought to take up today.  Anything further?

10         MR. LAUER:  Not from us, your Honor.

11         MS. TINIO:  No, your Honor.

12         THE COURT:  Thank you.  We are adjourned.

13         (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25